# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **HARMON C. STRUNK, JR., #66295280,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL NO. 3:16-CV-1470-L-BK** |
| | § | |
| **WILLIAM RESTRO, et al.,** | § | |
| **Defendants.** | § | |

## FINDINGS, CONCLUSIONS AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

Pursuant to 28 U.S.C. § 636(b) and *Special Order 3*, this case was automatically referred to the United States magistrate judge.  Although Plaintiff paid the filing fee, the Court did not issue process pending preliminary screening.  Upon review of the relevant pleadings and law, and for the reasons that follow, this case should be summarily **DISMISSED**.

### I. BACKGROUND

On June 1, 2016, Plaintiff, a federal prisoner at FCI Seagoville, filed his *pro se Complaint Pursuant to 28 U.S.C. 1331 and Bivens Action* against Dr. J. Capps, Dr. A. Ducksworth[1], Dr. William Restro[2], Medical Administrator Hunter, Assistant Medical Administrator Graham, Warden E. M. Mejia, and Executive Officer Burns, in their individual capacities.  Doc. 3 at 1-2.  The Complaint, as supplemented by the *Answers to the Magistrate Judge's Questionnaire*, asserts Defendants were deliberately indifferent to Plaintiff's serious medical needs in violation of the Eighth Amendment and 18 U.S.C. § 4042.  Doc. 3 at 2, 8-9. Specifically, Plaintiff alleges that during his incarceration at FCI Seagoville, Defendants

---

[1] Plaintiff incorrectly spells this Defendant's last name.  According to the medical reports attached to the complaint, this Defendant's name is "Duckworth."

[2] Plaintiff incorrectly spells this Defendant's last name.  According to the medical reports attached to the complaint, this Defendant's name is "Resto."

deliberately denied and delayed treatment for his chronic ailments that included ankle and wrist injuries; failed to monitor his catheter following a kidney procedure; and denied him the services of a medical assistant to push his wheelchair to food services, the medical department, and the laundry.  Plaintiff claims that as a result of the lack of medical care, he is now bound to a wheelchair.  Doc. 3 at 8; Doc. 8 at 5.  Regarding the denial of a medical assistant or "pusher," his pleadings, as liberally construed, also seek redress under the Americans with Disabilities Act. Doc. 8 at 3; Doc. 3 at 17.  Plaintiff  seeks compensatory and punitive damages, and requests that the Bureau of Prisons ("BOP") be required to process his request for compassionate release under 18 U.S.C. § 3582(c).  Doc. 3 at 16-17.[3]

Along with the complaint and affidavit, Plaintiff has submitted 65 pages of exhibits, consisting of copies of portions of medical reports, Health Service Department notifications, hospital discharge summaries, grievances, and e-mails to prison officials and staff.  Doc. 3 at 24-91.  With his answers to the Court's Questionnaire, he also included 19 pages of exhibits.  Doc. 8 at 16-35.

Plaintiff's allegations, supported by the partial medical records, confirm that he suffers from numerous chronic ailments, including: a seizure disorder, Alzheimer disease and dementia, stenosis of the brain, hypertension and heart disease (including one prior stroke and two prior heart attacks), migraine headaches, and anxiety and depressive disorders.  Plaintiff also suffers from chronic degenerative arthritis of the left ankle, stemming from a 1974 left ankle fracture, a 1975 defective screw, degenerative joint disease ("DJD"), and open ulcers.  Doc. 3 at 26, 28-30,

---

[3] Subsequent to filing this suit, Plaintiff notified the Court that he is now incarcerated at the Fort Worth Federal Medical Center.  Doc. 7.

38.  Following his conviction in February 2013, Plaintiff re-fractured his left ankle at a San Antonio federal prison and, although two new screws were inserted, they became loose and infected after he later fell.  Doc. 3 at 40.  On April 25, 2013, Plaintiff was transferred to FCI Seagoville.  Doc. 3 at 3.  Plaintiff avers that, prior to his confinement, he qualified for disability benefits under both the Veterans and the Social Security Administrations.  Doc. 3 at 71.

## II. ANALYSIS

### A. <u>Subject Matter Jurisdiction</u>

Before screening an *in forma pauperis* complaint under 28 U.S.C. § 1915(e), the Court must examine the threshold question of whether it has subject-matter jurisdiction.  It is an issue of the utmost importance, and should be addressed, *sua sponte* if necessary, at the inception of any federal action.  *See System Pipe & Supply, Inc. v. M/V Viktor Kurnatovsky*, 242 F.3d 322, 324 (5th Cir. 2001); Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

### 1. Compassionate Release

In light of his chronic ailments, Plaintiff also requests the Court to order the BOP "to properly process [his] request for compassionate release."  Doc. 3 at 17.  He relies on 18 U.S.C. § 3582(c) and 18 U.S.C. § 4205(g).  *Id.*  However, even if the BOP were named as a Defendant, the Court lacks jurisdiction to grant compassionate release under section 3582(c)(1)(A)(i), where the BOP director has not filed a motion requesting a modification of sentence.  Under that section only the BOP Director has the discretion to ask a court to reduce a term of imprisonment if it is determined that extraordinary and compelling reasons warrant such a reduction.  *See Engle v. United States*, 26 Fed. App'x 394, 397 (6th Cir. 2001) (district court lacks jurisdiction to *sua*

*sponte* grant compassionate release to federal prisoner where the BOP Director has not filed a motion requesting a modification of sentence).  Accordingly, Plaintiff's requests for compassionate release should be dismissed for want of jurisdiction.

### 2.  Americans with Disabilities Act

Throughout his pleadings, Plaintiff avers that he is an "ADA inmate" and that he falls within the parameters of the Americans with Disabilities Act ("ADA").  Doc. 3 at 17, 18, 22, 56.  However, to the extent he seeks to raise a claim, the ADA is not applicable to the federal government and federal agencies such as the BOP.  *See Henrickson v. Potter*, 327 F.3d 444, 447 (5th Cir. 2003) ("the entire federal government is excluded from the coverage of the ADA"); *Chamberlain v. Chandler*, 344 Fed. App'x 911, 913 (5th Cir. 2009) (dismissing ADA claim brought by inmate against the BOP).  Consequently, any claim under the ADA against Defendants should be dismissed for want of jurisdiction.

In a letter addressed to the Court and attached to the answers to the Questionnaire, Plaintiff, for the first time, vaguely references "Section 504 Rehabilitation Act" in connection with his "wheel chair pusher" issue.  Doc. 8 at 19.  However, even if he is seeking to raise a claim under section 504, Plaintiff cannot sue Defendants in their individual capacities.  *See Lollar v. Baker*, 196 F.3d 603, 609 (5th Cir. 1999) (Rehabilitation Act does not permit action against a person in an individual capacity).  Moreover, any "claims for monetary damages for alleged discrimination under any program or activity against the Bureau of Prisons or its director are shielded by sovereign immunity."  *Chamberlain*, 344 Fed. App'x at 913 (citing *Lane v. Pena*, 518 U.S. 187, 192-193 (1996)).  Therefore, any ADA claims against Defendants should also be dismissed for want of jurisdiction.

**B.  Preliminary Screening of Remaining Claims**

Although Plaintiff paid the applicable filing fee, his remaining claims are subject to preliminary screening under 28 U.S.C. § 1915A.  *See Martin v. Scott*, 156 F.3d 578, 579 (5th Cir. 1998) (section 1915A statutory screening provision applies to all prisoners' actions against governmental entities, their officers and employees, regardless of whether the prisoner is proceeding *in forma pauperis*).  Section 1915A(b) provides for the *sua sponte* dismissal of a complaint if the Court finds that it (1) is frivolous or malicious, (2) fails to state a claim upon which relief may be granted, or (3) seeks monetary relief against a defendant who is immune from such relief.  A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).   A complaint fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted).

The Court liberally construes Plaintiff's filings with all possible deference due a *pro se* litigant.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (*pro se* pleadings are "to be liberally construed," and "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."); *Cf.* Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice").  Even under this most liberal construction, however, Plaintiff's claims fail to state a claim upon which relief can be granted.

### 1.  18 U.S.C. § 4042

Plaintiff maintains Defendants violated 18 U.S.C. § 4042, which provides, in part, that the duties of the BOP include the "safekeeping, care, and subsistence of all persons charged with or convicted of offenses against the United States."  18 U.S.C. § 4042(a)(2).  While the Court of Appeals for the Fifth Circuit has not yet ruled on whether this statute creates a separate cause of action, other circuits have determined that it does not create a claim against either the BOP or its employees.  See *Palmisano v. Franco*, 2001 WL 822529 at *2 (5th Cir. 2001) (unpublished *per curiam*) (citing *Harper v. Williford*, 96 F.3d 1526, 1528 (D.C. Cir. 1996); *Chinchello v. Fenton*, 805 F.2d 126, 134 (3rd Cir. 1986)); *Nwaebo v. Hawk–Sawyer*, 83 Fed. App'x 85, 86 (6th Cir. 2003); *Williams v. United States*, 405 F.2d 951, 954 (9th Cir. 1969).  These cases are persuasive.  Section 4042 sets out the duties of the BOP; it does not create a separate cause of action outside of *Bivens* or the Federal Tort Claims Act.  Accordingly, any claim based on alleged violations of section 4042 is without merit and should be dismissed for failure to state a claim.

### 2.  *Bivens* Claims

To state a constitutional violation for denial of medical care an inmate must allege acts or omissions "sufficiently harmful to evidence a deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  The burden of demonstrating deliberate indifference to a serious medical need by correctional officials and healthcare providers is "an extremely high standard to meet." *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 756 (2001).  A prison official acts with deliberate indifference "only if he knows that inmates face a substantial risk of serious bodily harm and he disregards that risk by failing to take reasonable measures to abate it." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (quoting *Farmer v. Brennan*,

511 U.S. 825, 847 (1994)).  "Unsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances." *Rogers v. Boatright*, 709 F.3d 403, 410 (5th Cir. 2013) (quoting *Gobert*, 463 F.3d at 346).  Moreover, "[d]elay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference that results in substantial harm." *Id.* (quoted case omitted).

Here, even accepting the facts pled by Plaintiff as true, his complaint and Questionnaire answers, along with the partial medical record, fail to state a plausible claim for relief under the high deliberate indifference standard.

(a)  Drs. Capps, Ducksworth, and Restro

(i)   *Chronic Ankle and Wrist Injuries*

Plaintiff asserts Drs. Capps, Ducksworth, and Restro were deliberately indifferent to his chronic ankle and wrist injuries.  He claims that, when he first arrived at FCI Seagoville, Dr. Capps failed to treat and recognize "the immediate dangers" stemming from his "serious medical needs." Doc. 8 at 5; Doc. 3 at 4.  He maintains that even a lay person would have recognized that he needed immediate medical attention for his left ankle, which was "damaged, bleeding, [and] the bone [was] exposed and swollen from infection." Doc. 8 at 5.  Plaintiff avers that Dr. Ducksworth also "ignore[d] [his] pleas for help" and gave him "no medical attention at all even after more than a year had passed and [his] condition had detiorated [sic] to the point [he] was unable to walk at all and in a wheelchair." Doc. 8 at 6.  Plaintiff also claims that Dr. Restro "turned a blind eye" to his preexisting medical problems. Doc. 8 at 8.

Even assuming that his chronic ankle and wrist ailments were a serious condition for constitutional purposes, Plaintiff has alleged facts (confirmed by the partial medical records attached to the complaint and answers to the Questionnaire) that negate any inference of deliberate indifference by Drs. Capp, Ducksworth, and Restro.  In fact, Plaintiff was seen, examined, and treated on numerous occasions for the chronic ankle and wrist injuries during the period that he alleges receiving no medical care.  Notably, during the two and one-half years following his arrival at FCI Seagoville, Plaintiff was examined at least eight times by Drs. Capps, Ducksworth, and Restro for his chronic conditions.  *See* Doc. 8 at 5-8, Doc. 3 at 30, Doc. 3 at 34, Doc. 3 at 28-29, Doc. 3 at 36, Doc. 3 at 40, Doc. 3 at 6, Doc. 3 at 38.  He was also seen by a nurse for a soft shoe permit in May 2013, Doc. 3 at 68, and his ankle was x-rayed in June 2013.  Doc. 3 at 69.  The radiology report confirmed one defective screw and severe DJD in the left ankle, Doc. 3 at 69.  Moreover, in February 2014, Dr. Capps recommended Plaintiff for an orthopedic evaluation, which was approved in May 2014 and then scheduled in September 2014. Doc. 3 at 39; Doc. 3 at 36; *see also* Doc. 3 at 5.

Ultimately, on April 3, 2015, Dr. William R. Vandiver, an orthopedic specialist, evaluated Plaintiff's chronic ankle injury and swollen writs and reviewed newly taken x-rays. Doc. 3 at 41-42.   The specialist noted:

> I told Mr. Strunk that he has severe arthritis in his ankle which is causing pain, reduced range of motion and instability.  I told him the retained hardware is probably not causing any of the symptoms and I would not recommend removing it.  I told him he may ultimately require an ankle fusion but that would be a last resort.  I did reassure him that despite a possible history of prior infection, I did not see any radiographic or clinical evidence of acute or chronic bone infection.  My recommendation at this time is a sturdy, dynamic ankle brace that he can wear daily and should hopefully decrease incidences of instability which probably cause the most pain.  He understood and agreed and will follow up as needed depending on how he does with that.

Doc. 3 at 42.  Shortly after, on April 22, 2015, based on Dr. Vandiver's recommendation, an ankle brace or prosthesis was approved, Doc. 3 at 76, and on September 3, 2015, Plaintiff was seen at the Hanger Clinic for the custom design of the left foot/ankle brace.  Doc. 8 at 34. However, the wrong brace was delivered, Doc. 3 at 23, and as of the time Plaintiff submitted answers to the Court's Questionnaire, he still had not received a proper ankle brace.  Doc. 8 at 13.

In light of the substantial treatment received, Plaintiff has failed to set forth a plausible claim that Drs. Capps, Ducksworth, and Restro were deliberately indifferent to his chronic ankle and wrist conditions.   While Plaintiff apparently wanted additional tests to be performed or other treatment, his disagreement with the treatment provided, without more, does not amount to deliberate indifference.  *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997) ("Disagreement with medical treatment does not state a claim for Eighth Amendment indifference to medical needs.").  Moreover, delay in providing medical care does not give rise to an Eighth Amendment violation unless there is "deliberate indifference that *results in substantial harm*."  *Rogers v. Boatright*, 709 F.3d 403, 410 (quotations and quoted case omitted; emphasis in original).  Here, Plaintiff has alleged no facts from which it can be inferred that he suffered substantial harm as a result of the delay in scheduling an orthopedic evaluation or otherwise receiving treatment for his lingering ankle and wrist conditions.  Doc. 3 at 8-9, 19-20.  True, he claims that as a result of the lack of medical care he is now bound to a wheelchair.  Doc. 8 at 5, 8.  Yet Plaintiff has twice admitted that he began using a wheelchair as early as June 2013, shortly after arriving at FCI Seagoville. *See* Doc. 3 at 40 (March 3, 2015 Clinical Notes by Dr. Restro); Doc. 8 at 24 (April

15, 2015 Inmate Grievance).  Thus, contrary to his assertions, the use of a wheelchair was not due solely to the delay in providing adequate treatment for his chronic ankle and wrist ailments.

At the most, Plaintiff's allegations amount to negligence.  However, negligent medical care or medical malpractice is not actionable under section 1983.  *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (negligent medical care or medical malpractice does not rise to a constitutional violation); s*ee also Kingsley v. Hendrickson*, ___ S. Ct. ___, 135 S. Ct. 2466, 2472 (2015) ("liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process.").  Thus, Plaintiff has failed to allege sufficient facts supporting a claim of deliberate indifference to his chronic ankle and writ injuries.[4]

(ii)     *Infection Due to Inadequate Monitoring of Catheter*

Next, Plaintiff alleges Dr. Restro failed to adequately monitor and regularly change his catheter following his November 4, 2015 kidney procedure at Dallas Regional Medical Center. Doc. 3 at 6.  Plaintiff asserts that as a result, he experienced a "severe infection," which damaged his penis.  Doc. 3 at 6.  Specifically, he complains that (1) his unit was a "non-sterile environment" for post-operative care, (2) no antibiotics were administered while Dr. Restro was

---

[4] All claims against Dr. Capps and Ducksworth preceding May 1, 2014 (two years before the signing of the complaint) are time barred unless Plaintiff timely exhausted his administrative remedies, as he asserts in answer to the Questionnaire.  Doc. 3 at 17; Doc. 8 at 3.  *See Wright v. Hollingsworth*, 260 F.3d 357, 359 (5th Cir. 2001) (citing *Harris v. Hegmann*, 198 F.3d 153, 157-59 (5th Cir. 1999) (holding that prisoner's administrative exhaustion proceedings toll the limitations period).  But the Court cannot resolve the exhaustion question *sua sponte* prior to service of process.  *See Jones v. Bock*, 549 U.S. 199, 216 (2007) (holding "that failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints."); *Carbe v. Lappin*, 492 F.3d 325, 328 (5th Cir. 2007) (concluding *sua sponte* dismissal of prisoner's *Bivens* civil rights action for failure to exhaust administrative remedies before responsive pleading is filed was not proper because lack of exhaustion was an affirmative defense).

on an extended vacation, and (3) the "catheter system" was not changed until January 2016. *See* Doc. 8 at 8, 14 (referencing an April 25, 2016 inmate grievance attached to the complaint, Doc. 3 at 83-85); *see also* Doc. 3 at 55-56.

Again, Plaintiff fails to state a claim upon which relief can be granted. As he admitted in his grievance, the above actions were at the most "negligent." Doc. 3 at 85. As previously noted herein, negligence is not actionable. *Estelle*, 429 U.S. at 106 (negligent medical care or medical malpractice does not rise to a constitutional violation). Additionally, Plaintiff's filings allege no factual detail from which the Court can discern that delaying the antibiotic regimen until November 20, 2015, Doc. 3 at 55, resulted in substantial harm. *Rogers*, 709 F.3d at 410 ("[d]elay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference that results in substantial harm.").

(iii)    *Other Chronic Ailments*

Plaintiff also claims that Drs. Ducksworth and Restro were deliberately indifferent to his other chronic conditions. Doc. 8 at 6, 8. Specifically, he complains of "a stroke, 3 heart attacks and a kidney failure with RCC cancer in [his] left kidney and kidney stones in [his] right kidney." Doc. 8 at 8.

The records contradict Plaintiff's allegations and confirm that he was seen, examined, and treated on several occasions for all his chronic ailments. On May 31, 2013, Dr. Duckworth examined Plaintiff for hypertension and seizure, cardiac, and neurological ailments. Doc. 3 at 30. On June 12, 2013, Plaintiff was seen by the on-duty nurse for crushing heart pain, Doc. 3 at 33, and admitted to the Dallas Regional Medical Center, Doc. 3 at 4. The treating physician noted that an electrocardiogram had been performed, that there was no evidence of myocardial

injury, and that it would be reasonable to conduct stress testing.  Doc. 3 at 35.  On August 7,

2013, Dr. Ducksworth again examined Plaintiff for chronic ailments and prescribed two new

medications:  Amitriptyline for low back pain and anxiety, and Topiramate for seizures.  Doc. 3

at 34.  On February 4, 2014, Dr. Capps also examined Plaintiff for chronic ailments.  Doc. 3 at

28-29.  Later, on July 3, 2014, a physician assistant saw Plaintiff for hip pain; acetaminophen for

pain was renewed, and x-rays of the hip were ordered for the following day.  Doc. 3 at 72.

Subsequently, from September 10 to September 17, 2014, Plaintiff was admitted to

Dallas Regional Medical Center for syncopal episodes and complaints of chest pain.  Doc. 3 at

80.  The partial discharge summary reflects Plaintiff was taking several medications:  Elavil,

Aricept, Calan, Lipitor, Plavix, Topamax, Vitamin B12.  Doc. 3 at 81.  And on September 18,

2014, immediately following Plaintiff's hospital discharge, Dr. Ducksworth examined him.  Doc.

3 at 36,.

While Plaintiff ostensibly desired different or additional treatment, such disagreements

do not support a claim of deliberate indifference.  *Norton*, 122 F.3d at 292.  Moreover, in light of

the considerable treatment provided, Plaintiff has failed to set forth a plausible claim that Drs.

Ducksworth and Restro were deliberately indifferent to his chronic conditions.

### (b) Defendants Hunter, Graham, Mejia and Burns

During Plaintiff's incarceration at FCI Seagoville, Hunter was the Health Services

Administrator, Graham was the Assistant Medical Administrator, Mejia was the Warden, and

Burns was the Executive Officer.  Although Plaintiff acknowledges they were not his treating

physicians, he nonetheless asserts deliberate indifference claims against them, contending they

hindered, denied, and delayed medical treatment for his chronic ailments and refused to approve

a medical assistant to push his wheelchair for basic life necessities, such as going to food services, medical visits, and laundry facilities.  Doc. 3 at 6-7; Doc. 8 at 6, 8.  However, his allegations are devoid of any factual enhancement and plainly speculative and conclusory.  As discussed above, Plaintiff's pleadings and the numerous attachments detail the substantial treatment that he received for his chronic conditions.  And his disagreement with the treatment he received does not give rise to a constitutional violation.  Moreover, insofar as Plaintiff claims he should have been transferred to a care level three facility, he has no constitutional right to be housed at a particular facility.  *See Olim v. Wakinekona*, 461 U.S. 238, 249-250 (1983); *Tighe v. Wall*, 100 F.3d 41, 42 (5th Cir.1996).

To the extent Plaintiff is seeking to recover under *Bivens* the money he allegedly paid to inmates for caretaking and wheelchair-pushing services, the denial of a medical assistant to push his wheelchair does not rise to the level of deliberate indifference.  Plaintiff has not alleged that Defendants were aware of a substantial risk of harm to his health as a result of being denied a medical assistant, and that they disregarded that risk of harm or intended the harm to occur, nor do the factual scenarios he has advanced support such a conclusion.  *Farmer*, 511 U.S. at 834.  To the contrary, Plaintiff's allegations and the records he attached in support of his complaint indicate that his chronic medical ailments were adequately monitored and that Defendants were cognizant that he had been using a wheelchair since June 2013.

Because Plaintiff has clearly failed to present more than "naked assertion[s]" devoid of "further factual enhancement," *Twombly*, 550 U.S. at 557, his claims that Defendants Hunter, Graham, Mejia, and Burns were deliberately indifferent to his medical needs fail to state a claim that is plausible on its face, *Id.* at 555, 570, and should be dismissed.

### III. LEAVE TO AMEND

Ordinarily, a *pro se p*laintiff should be granted leave to amend his complaint prior to *sua sponte* dismissal with prejudice.  *See Brewster v. Dretke,* 587 F.3d 764, 767-768 (5th Cir. 2009) (*per curiam)* (while generally, "a *pro se* litigant should be offered an opportunity to amend his complaint before it is dismissed," leave to amend is not required where plaintiff "has already pleaded his 'best case.'").  Here, based on the legal theory and facts Plaintiff posits in both the complaint and answers to the Questionnaire, he cannot, as a matter of law, state a colorable legal claim.  Thus, the Court concludes that granting leave to amend would be futile and cause needless delay.

That notwithstanding, Petitioner is provided adequate notice of the deficiencies of his complaint by this recommendation, and the opportunity to respond or seek leave to amend during the 14-day objection period.  *See Brown v. Taylor*, 829 F.3d 365, 370 (5th Cir. 2016) (*sua sponte* dismissal with prejudice "is cabined by the requirements of basic fairness," and thus, unless dismissal is without prejudice or the plaintiff has alleged his best case, the district court must give "the plaintiff notice of the perceived inadequacy of the complaint and an opportunity for the plaintiff to respond"); *cf. Magouirk v. Phillips,* 144 F.3d 348, 359 (5th Cir. 1998) (magistrate judge's recommendation provided adequate notice and reasonable opportunity to oppose *sua sponte* invocation of defense).

### IV. RECOMMENDATION

For the foregoing reasons, it is recommended that Plaintiff's claims under the Americans with Disabilities Act and for compassionate release be **DISMISSED WITHOUT PREJUDICE** for want of jurisdiction, *see* Fed. R. Civ. P. 12(h)(3), that Plaintiff's claims under *Bivens* and 18

U.S.C. § 4042 be summarily **DISMISSED WITH PREJUDICE** for failure to state a claim, *see* 28 U.S.C. § 1915A(b), and this case be **CLOSED**.

    **SIGNED** November 18, 2016.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND
NOTICE OF RIGHT TO APPEAL/OBJECT**

    A copy of this report and recommendation will be served on all parties in the manner provided by law.  Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Services Automobile Ass'n,* 79 F.3d 1415, 1417 (5th Cir. 1996).

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE